[No. F061103. Fifth Dist. Feb. 8, 2012.]

CONSOLIDATED IRRIGATION DISTRICT, Plaintiff and Respondent, v.
CITY OF SELMA et al., Defendants and Appellants;
LARRY J. RAVEN et al., Real Parties in Interest and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*The opinion in the above-entitled matter filed on February 8, 2012, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports with the exception of parts I.A., III. IV.C., IV.D., V., and VI. of Discussion, and it is so ordered.

**COUNSEL**

Costanzo & Associates and Neal E. Costanzo for Defendants and Appellants.

Law Offices of P. Scott Browne, P. Scott Browne and Marsha A. Burch for Plaintiff and Respondent.

No appearance for Real Parties in Interest and Respondents.

**OPINION**

**DAWSON, J.**—In this proceeding under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.),[1] the trial court granted an irrigation district's petition for a writ of mandate challenging a city's use of a mitigated negative declaration in approving a 160-unit, 44-acre residential development.

The city appealed, arguing that the trial court erred by (1) concluding the irrigation district had standing to pursue this CEQA proceeding, (2) augmenting the record of proceedings with documents that were not submitted to the

---

[1] Further statutory references are to the Public Resources Code unless otherwise indicated.

city, (3) concluding the irrigation district's claims were not barred by a failure to exhaust administrative remedies, and (4) determining that substantial evidence supported a fair argument that the proposed development might have a significant effect on the environment.

In the published portion of this opinion, we conclude that (1) the trial court's finding that the documents it ordered included in the record of proceedings were submitted to the city is supported by substantial evidence and, therefore, the order to augment was properly granted; (2) the irrigation district had beneficial interests that might be affected by the project and, therefore, the trial court correctly determined the irrigation district had standing; and (3) the city has not shown any evidence was incredible and should be disregarded in applying the fair argument standard. In the unpublished portion, we conclude the irrigation district's claims were raised during the administrative process and, thus, are not barred by the exhaustion doctrine, and a fair argument existed that the development would contribute to a significant cumulative environmental impact—namely, the overdraft of groundwater and the lowering of the water table.

The judgment will be affirmed.

## FACTS

Plaintiff Consolidated Irrigation District (District) is an independent special district formed under the Water Code. Located in southern Fresno County, District's exterior boundaries enclose approximately 163,000 acres of land, of which about 145,000 acres are irrigated agricultural land. The exterior boundaries also contain the incorporated cities of Fowler, Kingsburg, Parlier, Sanger, and Selma. District's petition alleges its mission is to supply surface water from the Kings River for crops and groundwater recharge.

District's surface water irrigation deliveries average approximately 238,000 acre-feet per year. These deliveries are made using a system that includes approximately 350 miles of open channels, piped portions of the main channels, and numerous lateral pipelines.

District's groundwater recharge system includes over 50 recharge basins with a total surface area of approximately 1,300 acres. Deliveries to the recharge basins typically are made when there are excess flows or flood releases in the Kings River.

The real parties in interest in the CEQA proceeding are Raven Development, Inc., and Larry J. and Patricia Raven. They proposed developing a single-family residential subdivision that would be annexed by defendant City of

Selma (City). The subdivision is known as Casa Bella, consists of 160 single-family residential units, and is located on 44.33 acres on the north side of East Dinuba Avenue at Dockery Avenue. The subdivision was given tentative tract map No. 5361. All lots will have a minimum size of 7,000 square feet and the houses will range from 1,200 to 2,400 square feet.

The initial environmental study described the project site as fallow agricultural land dominated by ruderal weedy species. At an April 2008 hearing before the city council, Larry Raven stated he had torn out a vineyard on the project site years ago, the property no longer used surface water from District, and it was "sitting there growing weeds."

When built, the Casa Bella subdivision will be provided with potable water by California Water Service Company (Cal Water), a private water company. Cal Water provides City with water obtained from a series of private wells. Cal Water completed an urban water management plan on December 15, 2006. Under this plan, Cal Water has the capacity to serve the subdivision. The draft initial environmental study projected water demand at 450 gallons per day per household. Based on this projection, the 160 dwelling units will use an average of 72,000 gallons per day, which equates to 80.65 acre-feet per year. The initial environmental study stated the project's groundwater use "is not considered significant and will not significantly lower the groundwater table of the aquifer or interfere substantially with the recharge of the underground aquifer." The initial environmental study concluded that no mitigation would be required with respect to the project's impact on hydrology and water quality.

District submitted a draft engineer's report dated April 2007 that addressed groundwater consumption by urban development. The report contained an analysis that concluded groundwater consumption increases 1.75 acre-feet per acre when land use within District changes to urban development from agriculture (grape vines) irrigated with a combination of surface water and groundwater. The estimated change of 1.75 acre-feet per acre was supported by detailed calculations set forth in appendix B of the report. Multiplying this 1.75 acre-feet per acre by the 44.33 acres of the proposed subdivision yields an estimated increase in groundwater consumption of approximately 77.58 acre-feet. Thus, projections of the subdivision's groundwater consumption using the draft engineer's report is within 4 percent of the estimate in the initial environmental study (77.58 acre-feet versus 80.65 acre-feet).

The project's additional groundwater consumption can be placed in a number of different geographical contexts. For example, the largest groundwater basin referenced in the Upper Kings Basin Integrated Regional Water Management Plan (IRWMP) dated July 2007 is the San Joaquin Valley

Groundwater Basin. The next largest area is the Kings Groundwater Basin, which has two primary sources of surface water—the Kings River and the San Joaquin River via the Friant-Kern Canal. These surface water sources are not sufficient and, as a result, the Kings Groundwater Basin has been in an overdraft condition for many years, with an average annual overdraft of approximately 100,000 to 150,000 acre-feet.

The Kings Groundwater Basin was divided into an upper and lower region in the IRWMP. The plan refers to divisions 1, 2 and 3 of the Kings River Conservation District as the "Upper Kings Basin." The Upper Kings Basin contains all the area within District's boundaries as well as all of the Fresno Irrigation District and the Alta Irrigation District. Division 2 of the Kings River Conservation District contains all of District's area—that is, its 145,000 acres of irrigable land.

The IRWMP addressed the change in groundwater storage and continued overdraft conditions for the Kings Groundwater Basin and the IRWMP area. Between 1964 and 2004, a yearly average of 78,000 acre-feet of groundwater was removed from storage in the IRWMP area. The yearly average was 161,000 acre-feet for the Kings Groundwater Basin. The IRWMP estimated that the loss of groundwater from storage in the IRWMP area will be 46,000 acre-feet per year under the conditions that existed in 2005 and would be 54,000 acre-feet per year under conditions predicted for 2030. The IRWMP's estimates for the Kings Groundwater Basin are 98,000 acre-feet (2005 conditions) and 105,000 acre-feet (2030 conditions).

The IRWMP included findings that the current overdraft conditions and decline in groundwater levels will continue into the future, and groundwater levels in District's urban areas will decline between five and 10 feet between 2005 and 2030.

By November 26, 2007, City had prepared a draft initial environmental study and mitigated negative declaration for the Casa Bella subdivision. A 157-page traffic study prepared by Peters Engineering Group was attached to the initial environmental study as an appendix. The traffic study analyzed cumulative impacts on traffic at certain intersections using projected traffic volumes for the year 2025.

On December 10, 2007, City sent a notice of completion to the State Clearinghouse that (1) indicated a mitigated negative declaration was being used for the Casa Bella subdivision and (2) stated the local public review period would start on December 14, 2007, and end on January 14, 2008.

The Fresno County Local Agency Formation Commission (LAFCo) submitted a comment letter dated December 21, 2007. The letter asserted, among

other things, that the cumulative impact of numerous development projects over the course of many years undoubtedly would be a significant portion of the annual groundwater overdraft within District's region. District submitted a comment letter dated January 14, 2008, asserting that the conversion of agricultural land to urban land use was having an adverse and cumulatively significant effect on the groundwater basin.

On January 28, 2008, City's planning commission held a public hearing at which it considered the Casa Bella subdivision as well as another subdivision also located north of East Dinuba Avenue. The other subdivision was proposed by R.J. Hill Homes and consisted of 103 single-family residential lots on 27.8 acres. Stephanie Sherrell, an employee of District, appeared at the hearing, presented documents to the commission, and asserted it was important that the commissioners address groundwater overdraft issues and storm water drainage issues. After the discussion of the project ended, the commissioners passed a motion recommending that the city council approve the vesting tentative tract map for the Casa Bella subdivision.

On April 7, 2008, the city council held a public hearing to consider measures related to the Casa Bella subdivision. District presented a letter to the city council at the hearing. The letter raised concerns about impacts to agricultural land, air quality, and groundwater as well as cumulative impacts. The letter asserted that a full environmental impact report (EIR) was required.

Michael Gaston, City's community development director, made a presentation at the hearing. Gaston addressed District's concern about groundwater by (1) describing the assumptions and calculations underlying the estimate that the project would use approximately 80.65 acre-feet per year, (2) setting forth the comparison of 80.65 acre-feet per year to a total overdraft for District of 24,000 acre-feet per year, and (3) stating the initial study concluded the project's use of groundwater was an insignificant impact to groundwater overdraft in the basin.

An attorney representing City advised the city council that "[y]ou do have to consider the cumulative impacts." The attorney also stated: "When that impact[ is] cumulatively considered with projects that are realistically foreseeable, which would include RJ Hill's projects. The other ones they have mentioned, certainly there are plans on a developer[']s drawing boards somewhere. I don't even think we have tract map numbers for these things. And you've seen and we've all seen applications for various residential development come and go and nothing coming to fruition. So what you need to consider are the realistic cumulative impacts."

The city council adopted resolutions approving the project and the mitigated negative declaration.

## PROCEEDINGS

On May 7, 2008, District filed a petition for writ of mandate alleging that substantial evidence in the record of proceedings supported a fair argument that the project may result in a significant impact to the environment.

District also filed a request that City prepare the record of proceedings. In October 2008, City lodged a certified record of proceedings with the clerk of the superior court consisting of three volumes containing 912 pages.[2] The certificate of the city clerk that accompanied the lodged documents stated that the three volumes contained "true and correct copies of the documents on file in my office . . . relating to the proceedings before the City of Selma and the City Council of the City of Selma and Selma Planning Commission resulting in approval of Vesting Tentative Tract Map No. 5361 . . . ."[3]

In November 2008, District filed a statement of issues, which included the contention that "mandatory portions of the administrative record of proceedings have not been included in the Record lodged with the Court and certified by [City]."

In February 2009, District filed a motion to augment the record of proceedings and a motion for leave to conduct limited discovery regarding the record of proceedings. The motion to augment asserted that the record of proceedings certified by City did not contain four documents submitted to City's planning commission at its January 29, 2008, meeting. City agreed that the record of proceedings should have contained two of the four documents, (1) the IRWMP[4] and (2) the memorandum regarding groundwater impact analysis dated July 5, 2007, from Matt Zidar of WRIME to Mark Gilkey, District's general manager.

---

[2] The caption on the cover page of the three volumes used the statutory term "record of proceedings" rather than "administrative record." (§ 21167.6; see *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 61, fn. 4 [131 Cal.Rptr.3d 626] (*Madera Oversight*) ["administrative record" commonly used in place of statutory term "record of proceedings"]; see generally Remy et al., Guide to CEQA: Cal. Environmental Quality Act (11th ed. 2006) pp. 854–857 [preparing record of proceedings].) Consequently, we will use the term "record of proceedings" in this opinion. (*Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 767, fn. 2 [52 Cal.Rptr.3d 683] ["record of proceedings" used in opinion rather than "administrative record"].)

[3] The legal adequacy of the certification is not an issue in this appeal. (§ 21167.6, subd. (b)(1) ["public agency shall prepare and certify the record of proceedings . . ."]; see § 21081.6, subd. (a)(2) [if mitigation is adopted, lead agency's findings shall specify location and custodian of documents and materials constituting record of proceedings upon which it based its decision]; Cal. Code Regs., tit. 14, § 15091, subd. (e).)

[4] The IRWMP was prepared by Water Resources & Information Management Engineering, Inc. (WRIME), for the Upper Kings Basin Water Forum and Kings River Conservation District in coordination with California's Department of Water Resources. The plan was completed in July 2007.

City, however, opposed the request to augment the record of proceedings with (1) the Urban Impacts "white paper" (White Paper) dated November 2007 and prepared for District by Summers Engineering, Inc., and (2) a memorandum to District's board from Mark Gilkey, dated August 9, 2007, regarding Utility Mitigation Rate Alternative to Urban Impact Fees (Gilkey Memorandum).

On December 3, 2009, the trial court ordered that the record of proceedings be augmented with all four documents. As a result, volumes 4 and 5 were added to the record of proceedings, creating a record with a total of 1,379 pages.

The hearing on the petition for writ of mandate was held on March 29 and April 16, 2010. The trial court filed a 72-page statement of decision[5] on July 13, 2010, stating that the petition was granted.

The trial court concluded that (1) City failed to proceed in the manner required by CEQA when it approved the project, (2) the project approval must be invalidated and project implementation enjoined, and (3) City must prepare a full EIR to address the project's significant cumulative environmental impacts before it reconsiders approving the project. The trial court also stated that the mitigated negative declaration and project conditions lacked sufficient information to determine the project's impacts on drainage and District's canals, the cumulative impact of loss of agricultural land is significant, and the mitigated negative declaration did not adequately address the impact on air quality or greenhouse gas emissions.

At the end of July, City filed objections to the statement of decision. In response, the trial court filed an amendment to the statement of decision on September 8, 2010.

On September 9, 2010, City filed a notice of appeal.

---

[5] A superior court sitting as a court of review in a CEQA proceeding is not required to issue a "statement of decision" as that term is used in Code of Civil Procedure sections 632 and 634. (See 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2011) § 23.116, p. 1262.) Conversely, a superior court that chooses to issue a written document explaining its decision to grant or deny a writ of mandate in a CEQA proceeding is not prohibited from labeling the document "statement of decision." Regardless of the label used, the rights, obligations and procedures set forth in Code of Civil Procedure sections 632 and 634 and California Rules of Court, rule 3.1590 do not apply to any such document issued by the court in a CEQA writ proceeding.

## DISCUSSION

### I.  *Order Augmenting the Record of Proceedings*

City contends that the trial court erred by augmenting the record of proceedings with the Gilkey Memorandum and the White Paper because those documents were not before the decisionmaking body and were not considered by it.

####   A.  *Failure to Present Point under a Separate Heading**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

####   B.  *Merits of Challenge to Order Augmenting the Record of Proceedings*

As an alternative to the foregoing conclusion, we will consider additional issues raised by City's contention that the trial court improperly augmented the record of proceedings to include the Gilkey Memorandum and the White Paper.

#####     1.  *Standard of review*

The parties differ on the standard of review that this court should apply to the determinations the trial court made to support its decision to grant the motion to augment the record of proceedings.

City asserts that the trial court decided a factual question—whether the documents were submitted to City—for which there was no trial. City argues the trial court's decision was the equivalent of an order on a motion for summary judgment and, therefore, should be reviewed de novo like an order granting summary judgment. City further contends that our de novo review should be limited to an examination of the record of proceedings. Such an examination, City asserts, will show that neither document was submitted. City argues that a de novo review limited to the record of proceedings is the approach taken by this court in *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 895–897 [69 Cal.Rptr.3d 105] (*Porterville Citizens*) when it determined the trial court improperly augmented the record.

In contrast, District contends that the "only question here was whether the documents had been submitted and were therefore part of the record, or had

---

*See footnote, *ante*, page 187.

not, and therefore were not part of the record." District further contends that the trial court's decision, which was based on its evaluation of conflicting evidence, should be upheld under the substantial evidence standard of review.

■ Initially, we note that the parties finished briefing this appeal before we published a decision that addressed a number of questions related to the scope of the record of proceedings. (*Madera Oversight, supra*, 199 Cal.App.4th 48.) We discussed (1) the importance of distinguishing between documents that belong in the record of proceedings versus documents that might be admissible as extra-record evidence; (2) the statutory provisions governing the creation of the record of proceedings; (3) the mandatory language in section 21167.6, subdivision (e) that specifies the contents of the record of proceedings; (4) the trial court's authority to decide disputes concerning the contents of the record of proceedings; (5) the reviewability of the trial court's determination that a document should be included in, or excluded from, the record of proceedings; and (6) the standards that an appellate court applies when reviewing a trial court's determination to include a document in the record of proceedings pursuant to the mandatory language of subdivision (e) of section 21167.6. (*Madera Oversight, supra*, at pp. 63–66.)

Here, we will adopt and apply the same principles that we set forth in *Madera Oversight*. Application of the mandatory language of subdivision (e) of section 21167.6 governing the contents of the record of proceedings is not a matter committed to the discretion of the trial court. Consequently, the abuse of discretion standard of review does not apply. Instead, the findings of fact made by a trial court in determining whether documents are part of the record of proceedings under the mandatory language of section 21167.6, subdivision (e) are reviewed on appeal using the substantial evidence standard. (*Madera Oversight, supra*, 199 Cal.App.4th at p. 65.)

The fact that oral testimony was not presented to the trial court and City did not have an opportunity to cross-examine the individuals who submitted declarations supporting District's request does not convince us to deviate from the principles adopted in *Madera Oversight*. Appellate courts routinely apply the substantial evidence standard to findings of fact made by a trial court based on affidavits and declarations without any oral testimony. (E.g., *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 853 [79 Cal.Rptr.3d 603] [factual findings made to support attachment order reviewed under substantial evidence standard; attachment hearing decided on affidavits and declarations].)

Furthermore, our application of the substantial evidence standard to the trial court's findings concerning the motion to augment does not conflict with

our decision in *Porterville Citizens, supra*, 157 Cal.App.4th 885. That case did not involve a motion to augment the record of proceedings. Instead, it involved a motion requesting the trial court to take judicial notice of (1) an EIR for an amendment to the city's general plan and (2) an urgency ordinance regarding hillside development. (*Id.* at p. 889.) We inferred the trial court granted the motion because it mentioned the documents in its decision. (*Ibid.*) Because the trial court did not state whether it considered the documents to be part of the record of proceedings or admissible extra-record evidence, we considered both possibilities. We concluded that the EIR and ordinance were not part of the record of proceedings because there was no evidence showing they were presented to or considered by the decision makers, referenced in the CEQA documents prepared for the project, or mentioned during the public hearings. (157 Cal.App.4th at p. 890.) The complete absence of evidence in that case rendered it unnecessary for our decision to state that, if the trial court had impliedly found that the documents were part of the record of proceedings, such an implied finding could not pass muster under the substantial evidence rule. Accordingly, the analysis used and the conclusions this court reached in *Porterville Citizens, supra*, 157 Cal.App.4th 885 do not conflict with the principle that the substantial evidence standard applies to a trial court's finding concerning whether a document is part of the record of proceedings under the mandatory language of section 21167.6, subdivision (e).

Based on the foregoing, we will review the trial court's findings that the Gilkey Memorandum and the White Paper were presented to City during the administrative process by applying the substantial evidence standard of appellate review.

### 2. *The trial court's decision to augment*

The trial court's December 3, 2009, order directed that the record of proceedings be augmented with the Gilkey Memorandum and the White Paper, but did not include any findings or rationale. Subsequently, the trial court set forth a finding to support the order. Footnote 3 of the court's July 13, 2010, statement of decision reads: "The Court expressly finds that the White Paper and Gilkey Memorandum were submitted to the City during the administrative process and were properly included in the record by order of the Court. (AR 1362–1379)"

City filed objections to the statement of decision that included the argument that the statement of decision omitted any determination concerning which documents included in the supplemental record were submitted to the planning commission or city council. City asserted, "the court also incorporated the misrepresentation which is now a finding of the court that the White

Paper and Gilkey Memorandum were submitted to the Planning Commission. [Citations.] No evidence is cited to support these propositions and none exists."

In response to this objection by City, the trial court amended its statement of decision to include a detailed description of the parties' positions regarding the submission of the two documents and explicit findings regarding whose version of events was more credible. The trial court's amendment stated: "Having reviewed the various declarations and the deposition transcripts, the Court finds that the testimony of Stephanie Sherrell that she submitted the [Gilkey Memorandum and the White Paper] to the Selma Planning Commission is the most credible. Given the lack of a transcript of the Planning Commission hearing and the City's failure to maintain in the Planning Commission files the [other] two reports it now agrees were submitted to the City, it is more credible that these additional reports were also misplaced. That the Planning and Commission [*sic*] minutes only reflect three reports is explained in Stephanie Sherrell's testimony that the two reports, the Summers White Paper and Gilkey Memo, were printed out as a single Adobe pdf document and submitted together and could be mistaken for a single report. (Sherrell Depo., at 23:25–24:18)"

The trial court's written orders did not identify the specific CEQA provisions it applied in determining the documents were part of the record of proceedings. Nevertheless, those provisions are readily apparent from the citations in District's moving papers and the court's use of the word "submitted" in its findings. Section 21167.6, subdivision (e)(3) provides that the record of proceedings shall include "[a]ll . . . documents *submitted* by any person relevant to any findings . . . adopted by the . . . agency pursuant to [CEQA]." (Italics added.) In addition, section 21167.6, subdivision (e)(7) provides that the record of proceedings shall include "[a]ll written evidence or correspondence *submitted* to . . . the . . . public agency with respect to compliance with [CEQA] or with respect to the project." (Italics added.)

### 3. *City's theory of error*

City's theory that the trial court committed error by including the Gilkey Memorandum and the White Paper in the record of proceedings is based on this court conducting a de novo review of the record of proceedings. This is the wrong standard of review—the substantial evidence standard applies to this question. (See pt. I.B.1., *ante.*)

When applying the substantial evidence test, "the power of the appellate court begins and ends with a determination whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding."

(*Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1427 [238 Cal.Rptr. 160].) Evidence is "substantial" for purposes of this standard of review if it is of ponderable legal significance, reasonable in nature, credible, and of solid value. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935–936 [74 Cal.Rptr.3d 436].) The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) Furthermore, a trial court's credibility findings cannot be reversed on appeal unless that testimony is incredible on its face or inherently improbable. (E.g., *Artesia Dairy v. Agricultural Labor Relations Bd.* (2008) 168 Cal.App.4th 598, 604 [86 Cal.Rptr.3d 91]; *People v. Watts* (1999) 76 Cal.App.4th 1250, 1259 [91 Cal.Rptr.2d 1].) One practice guide has described the test for inherent improbability by stating that "reviewing courts have uniformly demanded more than mere improbability to warrant reversal: The evidence must be physically impossible or obviously false without resorting to inference or deduction." (1 Cal. Civil Appellate Practice (Cont.Ed.Bar 3d ed. 2011) § 5.19, p. 282.)

Under the foregoing principles, we will uphold the trial court's findings that (1) Sherrell's version of events was the more credible and (2) the Gilkey Memorandum and the White Paper were submitted to City during the administrative process. Substantial evidence exists in this case in the form of Sherrell's declaration in which she stated that she (1) attended the January 28, 2008, meeting of City's planning commission and (2) submitted four documents, including the Gilkey Memorandum and the White Paper. The fact that Sherrell's declaration is contradicted by the declaration of Neal Costanzo does not render her declaration insubstantial. Accordingly, we will uphold the trial court's order including the Gilkey Memorandum and the White Paper in the record of proceedings pursuant to the statutory language that states the record of proceedings shall include "[a]ll written evidence . . . submitted to . . . the . . . public agency with respect to compliance with [CEQA] or with respect to the project." (§ 21167.6, subd. (e)(7).)

### 4. *Summary*

We reject City's argument that the trial court erroneously included the Gilkey Memorandum and the White Paper in the record of proceedings on two separate and independent grounds. First, City forfeited the argument by violating the rule that requires each point be presented in an appellate brief under a separate heading. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Second, substantial evidence supports the trial court's finding of fact that the documents were submitted to City during its administrative process.

## II. Standing of a Public Agency

### A. Contentions of the Parties

A subheading in City's opening brief asserts that the trial court erred in determining District had standing. City contends that District, a public entity, may not claim public interest standing and pursue this CEQA action as a citizen suit. City also contends that District is not "beneficially interested" as that term is used in Code of Civil Procedure section 1086 and, therefore, fails to meet the usual test for standing. City argues that a public agency, such as an irrigation district, only has a beneficial interest in a CEQA proceeding if the project affects a natural resource over which the agency has jurisdiction.

District responds that it has citizen standing in this CEQA matter based on the rationale set forth by the California Supreme Court in its July 2011 decision in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155 [127 Cal.Rptr.3d 710, 254 P.3d 1005] (*Save the Plastic Bag*). In that case, the court held that an association of plastic bag manufacturers and distributors qualified for public interest standing and could pursue CEQA claims as a citizen suit. (52 Cal.4th at pp. 161, 171.) In addition, District contends it has standing because it has beneficial interests affected by the proposed project.

The trial court addressed City's standing arguments and determined that District was "beneficially interested in groundwater supplies, surface water supplies, and drainage in the area of its territory, all of which could be impacted by urban development such as the Project." The trial court also determined that District had sufficient authority or jurisdictional power to pursue environmental litigation.

### B. Citizen Suits Based on Public Interest Standing

■ As a general rule, a party does not have standing to seek a writ of mandate unless that party is "beneficially interested." (Code Civ. Proc., § 1086.) An exception to this general rule of standing exists where the mandamus petition seeks to enforce a public duty and raises a question of public right. (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 167.) In those circumstances, a citizen has standing based on his or her interest in having the laws executed and the duty in question enforced. (*Ibid.*) Our Supreme Court has referred to this type of standing as "public interest standing" and the type of lawsuit in which it exists as a "citizen suit." (*Id.* at p. 168.)[6]

---

[6] This type of standing also is referred to as the "public right/public duty" exception to the general requirement that a party must be "beneficially interested" to have standing in a mandamus proceeding. (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 167.)

Here, City argues that a public agency cannot qualify for public interest standing because it is a governmental entity and not a citizen. We find it unnecessary to address this argument because, as explained *post*, District's own interests are sufficient to provide it with (1) the authority to pursue this lawsuit under Water Code section 22650 and (2) standing as a beneficially interested party under Code of Civil Procedure section 1086.

### C. *Authority of District to Pursue a CEQA Proceeding*

City contends that District does not have the authority to pursue this CEQA proceeding. Our analysis of this contention begins with the authority granted to irrigation districts, particularly their authority to pursue litigation. It is well established that "an irrigation district has only those powers granted to it under the enabling legislation." (*Turlock Irrigation Dist. v. Hetrick* (1999) 71 Cal.App.4th 948, 952–953 [84 Cal.Rptr.2d 175].) The legislation defining the powers and purposes of irrigation districts is set forth in part 5 of division 11 of the Water Code. As to litigation, an irrigation district "may commence and maintain any actions and proceedings to carry out its purposes or protect its interests . . . ." (Wat. Code, § 22650.)

Neither party's appellate briefing mentioned Water Code section 22650, although the court inquired about the section during oral argument. Consequently, the parties have not addressed the meaning of the term "interests" as used in that section or discussed how those interests compare to the beneficial interest required for standing under Code of Civil Procedure section 1086.

The term "interests" used in Water Code section 22650 is not modified or restricted by any adjective. Thus, from a literal perspective, it would encompass any interest, including those that are classified as beneficial interests. (Civ. Code, § 3536 [a maxim of jurisprudence is that "[t]he greater contains the less"].) Based on a literal interpretation of the statutes, we conclude that the interests referenced in Water Code section 22650 include all beneficial interests sufficient to provide standing under Code of Civil Procedure section 1086. As a result, if an irrigation district is "beneficially interested" for purposes of Code of Civil Procedure section 1086, it has the authority under Water Code section 22650 to pursue CEQA litigation to protect that beneficial interest. This statutory interpretation renders a separate analysis of District's authority unnecessary. If District has a beneficial interest sufficient to establish its standing, it necessarily follows that District has the authority to maintain this CEQA proceeding.

## D. *Beneficial Interest*

### 1. *Jurisdictional limitations on an agency's beneficial interests*

City argues that a "public agency only has a special interest or right, and therefore, a beneficial interest in CEQA proceedings if the project affects a natural resource over which it has jurisdiction." City supports this argument by citing provisions of CEQA and the Guidelines[7] that limit the matters on which a public agency may make comments during the environmental review process specified by CEQA. It appears that no published case has ever adopted City's argument.

The CEQA provisions cited by City are section 21081.6, subdivision (c) and section 21153, subdivision (c). Section 21081.6, subdivision (c) provides in part: "Prior to the close of the public review period for a . . . mitigated negative declaration, . . . a public agency having jurisdiction over natural resources affected by the project, shall either submit to the lead agency complete and detailed performance objectives for mitigation measures which would address the significant effects on the environment identified by the . . . agency having jurisdiction over natural resources affected by the project, or refer the lead agency to appropriate, readily available guidelines or reference documents."

Section 21153, subdivision (c) provides in full: "A responsible agency or other public agency shall only make substantive comments regarding those activities involved in a project that are within an area of expertise of the agency or that are required to be carried out or approved by the agency. Those comments shall be supported by specific documentation."

The Guidelines cited by City did not include Guidelines section 15209, which provides: "Every public agency may comment on environmental documents dealing with projects which affect resources with which the agency has special expertise regardless of whether its comments were solicited or whether the effects fall within the legal jurisdiction of the agency."

■ We decline City's invitation to be the first appellate court to require a public agency to have jurisdiction over a natural resource affected by a proposed CEQA project as a condition to being "beneficially interested" for purposes of standing under Code of Civil Procedure section 1086. Under Public Resources Code section 21153, subdivision (c) and Guidelines section 15209,

---

[7] The term "Guidelines" refers to the regulations that implement CEQA and are codified in California Code of Regulations, title 14, section 15000 et seq.

public agencies are authorized to submit comments to the lead agency on projects that have impacts falling outside their legal jurisdiction if an activity of the project or an affected resource is within an area of expertise of the agency. If those comments are ignored by the lead agency, we believe the commenting agency should be able to follow through with a CEQA petition, provided that the commenting agency meets the "beneficially interested" requirement. To hold otherwise would create a category of comments that lead agencies could take less seriously because they would know they could ignore or mishandle such comments without risking litigation from the commenting agency.

Therefore, we conclude that a public agency's beneficial interests are not limited as a matter of law to natural resources over which it has jurisdiction.[8]

### 2. *General principles regarding beneficial interests*

■ The term "beneficially interested" generally means that the person " 'has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.]' " (*Save the Plastic Bag, supra,* 52 Cal.4th at p. 166.) In addition, the beneficial interest must be substantial and direct. (*Ibid.*) If the writ sought would enforce only a technical, abstract or moot right, the interest is not substantial for purposes of the beneficial interest requirement. (*Braude v. City of Los Angeles* (1990) 226 Cal.App.3d 83, 87 [276 Cal.Rptr. 256].)

■ As a general proposition, "[p]ublic agencies with a stake in the outcome of another agency's CEQA proceedings have a sufficient beneficial interest to establish standing to challenge a CEQA approval." (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra,* § 23.12, pp. 1148–1149.) "Responsible agencies" easily meet the beneficial interest requirement. "Other agencies may also be beneficially interested if resources or programs administered by them may be affected by the project. [Citations.]" (*Id.* at p. 1149.) For example, a water district that would have had to provide water to a proposed sand and gravel mining operation had standing to challenge a county's approval of an EIR for the project. (*Santiago County Water Dist. v. County of Orange* (1981) 118 Cal.App.3d 818, 823, 832 [173 Cal.Rptr. 602].)

---

[8] Based on this conclusion, we need not address City's argument that the Legislature granted water replenishment districts (not irrigation districts) the power to recharge groundwater and, therefore, District has no jurisdiction over groundwater. (See Wat. Code, § 60230, subd. (e) [water replenishment district shall have power to acquire and operate works useful or necessary to replenish groundwater basin within district]; but see Wat. Code, § 22078 [irrigation districts may "sink" any water for beneficial use of district or its inhabitants].)

### 3. *Application of principles in this case*

District argues that it has beneficial interests affected by the proposed development because it "is a property owner with many miles of canals running through the City of Selma and vicinity" and operates a program of groundwater recharge through its canals and recharge basins. District asserts that the operation of its canals and groundwater recharge basins is adversely affected by development that converts agricultural land to urban uses.

City argues that District cannot establish it is a property owner because property within District's control is state property. City also asserts that District uses only surface water and, thus, has no interest in local groundwater.

█ We conclude that District's operation of recharge basins as part of a groundwater recharge program gives District a special interest—that is, an interest not held by the public at large—in the local groundwater.[9] The direct efforts made by District to add to the local groundwater could be counter-acted by development projects that use groundwater. Furthermore, greater demand for groundwater might place more pressure on those entities operating recharge programs to increase the volume, efficiency, or both, of their programs. Therefore, District's recharge program provides a sufficient interest in groundwater for District to have a "beneficial interest" that may be affected by the project. Consequently, we conclude that District has standing to seek a petition for writ of mandate to enforce CEQA.

### III. *Exhaustion of Administrative Remedies*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Application of the Fair Argument Standard*

#### A. *General Principles*

█ When an agency certifies a negative declaration or a mitigated negative declaration, the agency's decision is subject to judicial review under the "fair argument" test. (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1579 [27 Cal.Rptr.3d 28] (*County Sanitation*).) If the fair argument test is met, then the agency is required to prepare and certify an EIR analyzing the project's potential impacts on the environment. (*Id.* at p. 1580.)

---

[9] In addition, District's operation of the recharge basins provides it with sufficient expertise in groundwater and the process of recharging groundwater to submit comments pursuant to section 21153, subdivision (c) and Guidelines section 15209.

[*]See footnote, *ante,* page 187.

The fair argument standard establishes a low threshold. (*Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039, 1067–1068 [72 Cal.Rptr.3d 690].) The standard is met if the agency's initial study of the project reveals substantial evidence supporting a fair argument that the project may have a significant adverse effect on the environment. (*Save the Plastic Bag, supra,* 52 Cal.4th at p. 171.) CEQA provides that "substantial evidence includes fact, a reasonable assumption predicated upon fact, or expert opinion supported by fact" (§ 21080, subd. (e)(1)) and excludes "argument, speculation, unsubstantiated opinion or narrative, [or] evidence that is clearly inaccurate or erroneous." (§ 21080, subd. (e)(2); see Guidelines, § 15384, subd. (a) [definition of substantial evidence].)

Whether the record contains sufficient evidence to support a fair argument is a question of law. (*Valley Advocates v. City of Fresno, supra,* 160 Cal.App.4th at p. 1068.) Consequently, appellate courts independently review the record of proceedings and determine whether there is substantial evidence to support a fair argument that the proposed project may have a significant environmental impact. (*County Sanitation, supra,* 127 Cal.App.4th at p. 1579.) Under this standard of independent review, when appellate courts examine the sufficiency of the evidence to support a fair argument, no deference is given the agency's determination. (*Ibid.*)

B. *Determinations Regarding Credibility of Evidence Submitted*

Based on the foregoing general principles, we conclude that City's contention that the "lead agency also has discretion to determine whether the evidence presented is substantial evidence" is not an accurate statement of the law. City cites *Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903 [21 Cal.Rptr.3d 791] to support its contention. In that case, the court set forth the usual principles that the fair argument standard is a low threshold and judicial review is de novo with a preference for resolving doubts in favor of environmental review. (*Id.* at p. 928.) In addition, the court stated: "Although our review is de novo and nondeferential, however, we must ' "giv[e] [the lead agency] the benefit of [the] doubt on any legitimate, disputed issues of credibility." ' [Citation.] The lead agency has discretion to determine whether evidence offered by the citizens claiming a fair argument exists meets CEQA's definition of 'substantial evidence.' " (*Ibid.*)

We read the reference to discretion in the last sentence in the foregoing quote as being limited to issues of credibility.[10] If interpreted broadly as City suggests, the last sentence would directly contradict the general principle that

---

[10] In addition, the quote concerns "evidence offered by the citizens" (*Pocket Protectors v. City of Sacramento, supra,* 124 Cal.App.4th at p. 928) and not evidence offered by other public agencies. Thus, *Pocket Protectors v. City of Sacramento* is not authority for the proposition

the existence of sufficient evidence to create a fair argument is a question of law. (E.g., *Wollmer v. City of Berkeley* (2009) 179 Cal.App.4th 933, 939 [102 Cal.Rptr.3d 19] [whether a fair argument exists is a question of law, not fact, subject to de novo review]; *Valley Advocates v. City of Fresno, supra*, 160 Cal.App.4th at p. 1068.)

This court has long recognized the principle that appellate courts conduct an independent review under the fair argument standard, " 'while giving [the lead agency] the benefit of a doubt on any legitimate, disputed issues of credibility.' [Citations.]" (*Stanislaus Audubon Society, Inc. v. County of Stanislaus* (1995) 33 Cal.App.4th 144, 151 [39 Cal.Rptr.2d 54]; see also *Nelson v. County of Kern* (2010) 190 Cal.App.4th 252, 282 [118 Cal.Rptr.3d 736]; *County Sanitation, supra*, 127 Cal.App.4th at p. 1579.)[11] To assist courts in distinguishing between after-the-fact justifications and situations where a question of credibility was legitimate and actually addressed by the agency, this court adopted the following principle: "[B]efore an agency may rely on its purported rejection of evidence as incredible, it must first identify that evidence with sufficient particularity to allow the reviewing court to determine whether there were legitimate, disputed issues of credibility." (*County Sanitation, supra*, 127 Cal.App.4th at p. 1597, fn. omitted.)

The requirement of identification with sufficient particularity was satisfied in *Bowman v. City of Berkeley* (2004) 122 Cal.App.4th 572 [18 Cal.Rptr.3d 814]. There, the record included the statement of the city council's staff that the opinion of Rash B. Gosh, Ph.D., was not credible because of misrepresentations he had made in other proceedings. (*Id.* at p. 582.) In that case, the court had no need to discuss the precursors to a legitimate dispute over credibility because the plaintiffs did not rely on Dr. Gosh's opinion in arguing that the record contained substantial evidence supporting a fair argument. (*Id.* at p. 583.)

In this appeal, City has provided no citations to the record of proceedings showing that the city council, the planning commission or staff addressed the credibility of any evidence presented. Therefore, we reject City's contention that evidence in the record should be regarded as incredible and ignored when applying the fair argument standard.

that a lead agency has the discretion to resolve credibility issues against other agencies at the initial study and negative declaration stage of the environmental review process.

[11] The California Supreme Court has never addressed how reviewing courts should treat an agency's credibility findings in the context of a negative declaration. Thus, our high court has not adopted or disapproved the principle that gives lead agencies the benefit of the doubt on legitimate, disputed issues of credibility raised in connection with negative declarations. Consequently, the court has never addressed (1) the factors that produce a *legitimate* dispute about credibility, (2) whether an agency's credibility findings must be explicit or (3) whether the reviewing court should infer the agency made credibility findings when the record is silent.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V., VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. District shall recover its costs on appeal.

Gomes, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied March 9, 2012, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 16, 2012, S200928.

---

*See footnote, *ante*, page 187.