Filed 7/1/24  Saenz v. Martinez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

DAWN SAENZ,

      Plaintiff and Appellant,

v.

PATRICK D. MARTINEZ,

      Defendant and Respondent.

E081471

(Super. Ct. No. CVMV2205053)

OPINION

APPEAL from the Superior Court of Riverside County.  Belinda A. Handy,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Westover Law Group and Andrew L. Westover, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## I.

## INTRODUCTION

Plaintiff and appellant, Dawn Saenz appeals the trial court's order denying her

request for a restraining order against defendant and respondent, Patrick Martinez.

Saenz's main argument is that the trial court erroneously denied her request because the

1

court found Martinez's behavior was "annoying," which means it was harassment that warranted a mandatory restraining order. We disagree and affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Saenz and Martinez are attorneys.[2] Between August and November 2022, Saenz and Martinez had a number of interactions that drove Saenz to request a restraining order against Martinez.

In August 2022, Saenz's staff called opposing counsel, Jerald Scott Bennett, to schedule a deposition. Martinez, who shared office space with Bennett at the time, "took over the call," began yelling at Saenz's staff, and was "rude to the point that the call was terminated." Martinez acted similarly toward Saenz's staff on two other occasions in the following weeks.

Saenz met Martinez for the first time on September 1, 2022, when they were at the Riverside Superior Court for unrelated matters. While Saenz was talking with opposing counsel in her case, Martinez yelled that Saenz "always gives bad advice." (Emphasis

---

[1] Because we resolve Saenz's appeal on a narrow ground that turns mostly on an issue of statutory interpretation, we provide only a brief recitation of the facts and proceedings below.

[2] We draw the facts from Saenz's declaration in support of her request for a restraining order and her testimony at the hearing on her request because the trial court found her credible while finding almost all of Martinez's evidence not credible. (See *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [trial court's credibility findings binding on appellate court unless the testimony is incredible on its face or inherently improbable].)

omitted.)  Martinez was "glaring at" Saenz as if he was trying to stare her down, and continued doing so while she talked with her client.

Saenz did not know who Martinez was, so she later approached him and asked him if he was an attorney.  Saenz told him to leave her alone and "used profanity to get [her] point across," causing Martinez to yell that Saenz was "so unprofessional" and become "more aggressive" with her.

About a week later, Saenz called Bennett's office to get his fax number to send him documents.  Martinez picked up the phone and was "rude, aggressive, and started screaming" at Saenz.  Martinez, who did not work with or for Bennett, demanded that Saenz send the documents electronically and "spoke over [Saenz] continually."  Saenz felt that Martinez's "aggression . . . was escalating."

Saenz encountered Martinez again at the Riverside Superior Court on October 17, 2022.  Martinez saw Saenz and began "screaming" at her and following her.  Saenz told him to stop yelling and to stop following her, but he continued and his behavior "escalated."  Martinez followed Saenz into an elevator and kept yelling at her.

Saenz and Martinez then made appearances in the same courtroom.  Martinez "glared at" and "stared at" Saenz but otherwise left her alone.  Later, when Saenz was driving away from the courthouse, Martinez "glared" at her again.

Saenz ran into Martinez again at the Riverside superior court about a week later.  Martinez "[g]lared at [Saenz] and immediately started following [her]," stood "a few feet away" from her when she stopped, and "started raising his voice and saying unintelligible

3

things." Saenz turned to the clerk's window, but Martinez "started yelling nonsense again, raising his voice louder." As Saenz walked away, Martinez "escalated to screaming at [Saenz] as he continued to rant in an unintelligible manner." Martinez was "more aggressive" than before and was staring at Saenz, laughing at her, and taunting her.

Saenz walked to the elevator and told Martinez to stop talking to her, but he continued yelling louder and got closer to Saenz as she waited for the elevator. Martinez "cornered" her against the closed elevator doors while "still yelling." The elevator doors opened, and Saenz got in while Martinez "continued to yell . . . as the doors closed."

About two weeks later, Martinez showed up at Saenz's office unannounced. The office door was locked for lunchtime, but Martinez "spoke to the person at [the] door and then returned to his vehicle," where he remained for about 10 minutes. One of Saenz's clients arrived for an appointment and Martinez started asking him questions, including asking what time Saenz's office would be open.

When Saenz's office manager opened the door, Martinez "came rushing in holding documents and demanding to know her name," yelling "over and over again, 'What is your name?'" (Emphasis added.) Martinez served the manager with documents for Saenz and said, "'Tell Ms. Saenz I will be seeing her soon,'" and slammed the door while laughing. In Saenz's view, the documents were "void," "made-up," and served only to harass her.

4

Saenz filed a request for a restraining order the next day. Based on Saenz's supporting declaration, the court issued a temporary restraining order (TRO) against Martinez, prohibiting him from contacting Saenz and being within 100 yards of her.

Saenz served the TRO on Martinez on November 7, 2022. About 15 minutes after serving it, Martinez called Saenz's office and private cell phone and left a voicemail on her cell. Saenz called the police. According to Saenz, Martinez is currently being prosecuted for violating the TRO and she received a criminal protective order against him.

One day after being served with the TRO, Saenz encountered Martinez at the Riverside Superior Court. Saenz told security that she had a TRO against Martinez and that he was not allowed to be within 100 yards of her, but Martinez was there to make an appearance. The trial court therefore modified the TRO to allow Martinez to make court appearances, even if Saenz were in the courthouse, but he had to stay outside of the courtroom, avoid her, and leave the area, as necessary.

The trial court held a multi-day hearing on whether to grant Saenz's request for a permanent restraining order against Martinez. A number of witnesses testified on Martinez's behalf, and both parties testified on their own behalf.

After the parties submitted, the trial court issued an oral ruling denying Saenz's request and dissolving the TRO. The court first explained that it found that Martinez had violated the restraining order by calling Saenz after being served with the TRO. In doing

so, the court noted that it did not find Martinez's testimony that he did not know he had already been served "credible at all."

The court then found that Martinez's behavior underlying the restraining order did not "arise to the level of being harassing," but found that he was "annoying" and "did things on purpose." The court therefore found that Saenz "had every reason to file for her [TRO]."

In the court's view, Martinez "skirted that line just enough" and was "milliseconds away from getting a restraining order granted against" him. The court also found Martinez's "lack of credibility" at the hearing was "atrocious" and not in line with being "an officer of the court." On the other hand, the court found Saenz credible.

The court nonetheless found that Martinez's behavior "just didn't rise to the level" of warranting a permanent restraining order. The court therefore denied Saenz's request for a permanent restraining order and dissolved the TRO.

The court explained, however, that Martinez was "clearly on notice" that his conduct in an out of the courtroom was unacceptable, his behavior was "disappoint[ing]" for an attorney, and that there may be consequences for it in the future.

Saenz timely appealed.

III.

DISCUSSION

Saenz argues the trial court erred because it found that Martinez's behavior was "annoying," which constitutes harassment that mandated a restraining order. We disagree.

Code of Civil Procedure section 527.6, subdivision (a)(1), provides, "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."[3] Subdivision (b)(3) of section 527.6, in turn, defines harassment in relevant part as "a knowing and willful course of conduct directed at a specific person that *seriously* alarms, annoys, or harasses the person, and that serves no legitimate purpose." (Italics added.) To obtain a restraining order under these provisions, Saenz thus had to show (among other things) that Martinez's behavior "seriously" alarmed, annoyed, or harassed her. (See *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762 (*Shild*).) "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

Saenz emphasizes that, when stating its oral ruling, the trial court told Martinez, "You were annoying. I think that you did those things on purpose. I think that you skirted the line . . . ." But immediately before making those findings, the trial court explained that although Martinez's behavior was "annoying," the court did not "think it

---

[3] All further statutory references are to the Code of Civil Procedure.

arises to the level of being harassing." It was for this reason that the trial court declined to grant Saenz's request for a permanent restraining order.

Saenz argues that Martinez's "annoying" behavior qualified as harassment under section 527.6, subdivision (b)(3), and thus the trial court had to issue a restraining order under section 527.6, subdivision (i). We disagree. At a minimum, Martinez's behavior had to be "seriously" annoying for it to qualify as harassment. (See § 527.6, subd. (b)(3) ["'Harassment' is . . .a knowing and willful course of conduct . . . that seriously alarms, annoys, or harasses the person . . . ."].)

Saenz does not cite, nor can we find, any authority that suggests merely "annoying" behavior suffices. *Schild* is instructive here, although it involved very different facts. There, a couple sought a restraining order against their neighbors because their children played basketball in their backyard, which "interfered with [the couple's] ability to rest and relax in their own home." (*Schild*, *supra*, 232 Cal.App.3d at p. 758.) The Court of Appeal framed the issue on appeal as whether the basketball playing "'seriously' alarmed, annoyed, or harassed the [couple]" (*id*. at p. 763.) under section 527.6 "to the extent that [it] 'actually cause[d] substantial emotional distress' to the [couple], and 'would cause a reasonable person to suffer substantial emotional distress." (Schild, *supra*, at p. 762.) There was no evidence that the couple suffered substantial emotional distress, but the *Schild* court held that, even if there were, the basketball playing would not cause a reasonable person to suffer substantial emotional distress because it "was not so outrageous, extreme, intense or enduring as to come within the

8

scope of . . . section 527.6." (*Id.* at p. 763.) This is because "[a] reasonable person must expect to suffer and submit to some inconveniences and annoyances" when "living among other people." (*Ibid.*)

*Schild* thus confirms that merely "annoying" behavior is not enough under section 527.6. Instead, the annoying behavior must be, at a minimum, "seriously" annoying.

The trial court here found that Martinez's behavior was only "annoying," but did not rise to the level of harassment. In other words, the court found that his conduct was not "seriously" annoying.

Saenz does not argue the trial court should have found that Martinez's behavior was "seriously" annoying, and instead argues that the trial court erred in refusing to issue a restraining order against Martinez after finding his conduct was "annoying." But because the court found that Martinez's behavior was only annoying, not "seriously" annoying, the court could not find that his behavior qualified as harassment under section 527.6, subdivision (b)(3). The court thus did not have to issue a restraining order against him under section 527.6, subdivision (i).

Saenz next argues that the trial court should have issued an order "restraining [Martinez's] future conduct" because his "harassment [was] likely to recur." But because the court found Martinez's behavior was not harassment under section 527.6, the court

had no need to determine whether Martinez's behavior was likely to recur or should be restrained in the future.[4]

In any event, our review of the trial court's decision to deny a request for a restraining order is highly deferential. We review a trial court's ruling denying a restraining request for an abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850.) When, as here, the trial court found that the appellant failed to carry their burden of proof, we determine "whether the evidence compels a finding in favor of the appellant as a matter of law." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) This requires us to determine "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*Ibid.*)

Saenz's evidence was not so overwhelming that the trial court *had* to grant her a restraining order against Martinez as a matter of law. The trial court thoroughly considered Saenz's declaration and testimony, which the court found credible, and reasonably found that Martinez's behavior "just skirted the line" of warranting a restraining order. Even assuming may have found otherwise, there was room for interpretation of the evidence and reasonable disagreement. We therefore cannot disturb the trial court's ruling.

---

[4] Given our resolution of these issues, we need not address Saenz's final argument that *Hansen v. Volkov* (2023) 96 Cal.App.5th 94, is distinguishable.

10

In short, the trial court found that Martinez's "annoying" behavior did not justify issuing a restraining order against him, and Saenz has failed to show that the court erred in reaching that conclusion.

IV.

DISPOSITION

The trial court's orders denying Saenz's request for a restraining order and dissolving the TRO are affirmed.  Martinez may recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:

RAMIREZ_____
          P. J.

RAPHAEL_____
          J.