Filed 6/28/13  P. v. Lopez CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

THE PEOPLE,

    Plaintiff and Respondent,            A132444

    v.                              (Humboldt County
                                     Super. Ct. No. CR1100590)

JOSE HERNANDEZ LOPEZ,

    Defendant and Appellant.
_____/

A jury convicted appellant Jose Hernandez Lopez of, among other things, transportation to sell a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and the trial court sentenced him to state prison.

On appeal, appellant contends the court erred by admitting evidence of his 2007 drug possession conviction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, appellant pleaded guilty to possessing heroin for sale (Health & Saf. Code, § 11351) and was placed on probation.

In February 2011, the People charged appellant with possession of a controlled substance for sale (Health & Saf. Code, § 11351), transportation to sell a controlled substance (Health & Saf. Code, § 11352, subd. (a)), use of a false compartment (Health & Saf. Code, § 11366.8, subd. (a)), and giving false information to a police officer (Pen. Code, § 148.9, subd. (a)).

Before trial, appellant moved to exclude evidence of the 2007 conviction. The prosecution opposed the motion, contending the evidence was admissible under Evidence Code section 1101, subdivision (b)[1] because the offense was "relevant to material facts in issue which are identity, motive, opportunity, scheme and knowledge." In 2007, Los Angeles law enforcement officers "observed the defendant and another male make contact. The two men were then approached by the law enforcement officers. The defendant gave permission for his vehicle to be searched . . . . The defendant pled guilty to the charge of possession for sale[ ] of heroin . . . ." The People argued the crimes were sufficiently similar to permit introduction of the 2007 conviction and were relevant to prove appellant was "the person responsible for the drugs concealed and that he knew of the substance's nature as a controlled substance."

In arguing against the motion, the prosecutor explained law enforcement observed a man approach appellant in a "high drug area[.]" The officers talked to appellant. "He consented to a search of the car and in the left air duct of the vehicle they found a quantity of heroin . . . five point three grams. . . ." The prosecutor argued the 2007 and 2011 incidents were sufficiently similar because, in "both cases [appellant had] custody and control of a quantity of heroin. Both cases it's in a concealed compartment in the vehicle. Both cases he consents presum[ably] because he doesn't believe that law enforcement is actually going to find where he's concealed the heroin."

After hearing the parties' argument, the court denied the motion and admitted evidence of appellant's 2007 conviction. The court concluded the evidence was relevant under section 1101, subdivision (b) to support an inference of "common design and plan" and that "the prejudicial effect is such that it outweighs the probative value."

*Prosecution Evidence*

Los Angeles Police Officer Enrique Hernandez testified about appellant's 2007 conviction. On August 3, 2007, Officer Hernandez was working in an area of Los Angeles known for the "use and sales of narcotics." Hernandez saw a known drug dealer

---

[1]    Unless otherwise noted, all further statutory references are to the Evidence Code.

2

named "Rivera" engage in two "hand-to-hand" drug transactions that day. That evening, Hernandez saw a man — later identified as appellant — park a Chevy Tahoe with no license plates in the middle of the street. Appellant got out of the car and began talking to Rivera. Hernandez believed a "narcotics transaction was going to take place[,]" so he approached appellant. He asked appellant for identification and appellant produced a Mexican driver's license with the name "Esteban Ramirez." After appellant consented, officers searched the Chevy Tahoe and found a plastic baggie containing 5.33 grams of heroin hidden in the driver's side air vent. The police arrested appellant for "possession and transportation of narcotics." Appellant pled guilty.

Law enforcement officers also testified about the 2011 incident. On the afternoon of February 1, 2011, a confidential informant told the Humboldt County Drug Task Force that a drug sale would take place on Elinor Road. The task force — including member Chris Ortega — began surveillance of the area. At approximately 3:48 p.m., a blue Ford sedan matching the informant's description drove to the area where Elinor Road comes to a dead-end. The car turned around and returned to the highway. A task force special agent followed the car, which returned to the dead-end area on Elinor Road a second time, rolled into the area slowly, and turned around to leave.

Task force members stopped the car and Ortega walked to the driver's side door, where he saw a man he later identified as appellant. There were a total of four people in the car: two men in the front and two women in the back. Ortega asked appellant how he was doing and whether he had a California driver's license; when appellant said he did not, Ortega asked him "if he would mind stepping out of the vehicle." Appellant said he would not mind and he got out of the car. Ortega told appellant he was "investigating drug activity in the area and . . . asked [appellant] if there were any drugs in his car." At that point, appellant said there were no drugs in the car and consented to a search of the vehicle. He also consented to a search of his person. Ortega searched appellant and

3

found a "found a large bundle of money" totaling $1,249 in the right pocket of appellant's pants.[2]

Another task force member, agent Kirkpatrick, searched the car with the assistance of a drug-detection dog and found a hidden compartment in the center console. The hidden compartment contained a clear plastic bag with 722.8 grams of heroin. When Ortega saw the "large quantity of suspected heroin[,]" he arrested appellant. Ortega *Mirandized* appellant, showed him the heroin, and "asked him if he wanted to talk . . . about" it. Appellant "stated that he did." Although appellant did not seem surprised when Ortega showed him the heroin, he spontaneously stated, "'I don't know anything about that stuff.'" When Ortega asked appellant whether he knew about the "drugs in the hidden compartment[,]" appellant "continued to deny it."

Ortega then told appellant he would process the package for fingerprints and asked Lopez whether he "would find his fingerprints on the package." In response, appellant said he "might." Later, he said, "'Why go through anymore drama?' It's mine. . . . I'll take the blame and nobody in the vehicle has anything to do with it." Appellant claimed a man in Los Angeles hired him to deliver the car with the drugs to Eureka. He admitted knowing the car contained drugs but denied knowing "specifically what kind of drugs[.]" Appellant said the man put the drugs into the hidden compartment but admitted he "may have touched it when the guy showed it to him." He also admitted the money in his pocket was payment for delivering the drugs and told Ortega there were about 20 ounces of heroin in the car.

*Defense Evidence*

Appellant claimed that a man he met at a Los Angeles bar asked him to drive a car to Eureka and "leave it at K-Mart." The man left $1,249 in the car for "the trip and expenses" and agreed to pay Ortega $2,000 when he returned to Los Angeles. Appellant agreed to drive the car to Eureka because he needed the money to pay his rent; he, his wife, and his friends planned to take a bus to Los Angeles after dropping off the car.

---

[2]    Appellant gave Ortega a Mexican driver's license and a Mexican identification card identifying him as Arcenio Larios.

4

Appellant testified he picked the car up at a gas station on February 1, 2011 and drove it toward Eureka. He testified he drove to the area where Elinor road dead-ended two times on the afternoon of February 1, 2011 because he was "looking for a bathroom" for his pregnant wife. Appellant denied receiving a package from a man in Los Angeles, denied knowing about the drugs in the car, denied telling Ortega that the drugs were his, and denied telling Ortega that his fingerprints might be on the package of heroin. He claimed he did not know there were drugs in the car.

Regarding the 2007 incident, appellant testified he did not know his car contained heroin. He explained he had "just bought the car from the dealer. . . ." Appellant denied pleading guilty; he claimed he did not know why the police officers "took [him] to jail and lock[ed] [him] up."

*Verdict and Sentencing*

A jury convicted appellant of all of the charges and the trial court sentenced him to state prison.

DISCUSSION

Appellant's sole claim on appeal is the court erred by admitting evidence of his 2007 conviction. "As a general rule, evidence of uncharged crimes is inadmissible to prove the defendant had the propensity or disposition to commit the charged crime. [Citations.] 'The reason for this rule is not that such evidence is never relevant; to the contrary, the evidence is excluded because it has too much probative value.' [Citations.] '"The natural and inevitable tendency"' is to give excessive weight to the prior conduct and either allow it to bear too strongly on the present charge, or to take the proof of it as justifying a conviction irrespective of guilt of the present charge. [Citations.] [¶] Evidence of other crimes is admissible, however, when relevant for a noncharacter purpose—that is, when it is relevant to prove some fact other than the defendant's criminal disposition, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake [of fact] or accident.' [Citations.]" (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*), citing § 1101, subd. (b); see also Simons, Cal. Evidence Manual (2013 ed.) § 6:10, pp. 491-493.) Evidence of a relevant prior

criminal act "may be excluded under section 352 if its probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Hendrix*, *supra*, 214 Cal.App.4th at p. 238.)

"Thus, the admissibility of uncharged crimes depends upon three factors: (1) the materiality of the facts sought to be proved; (2) the tendency of the uncharged crimes to prove or disprove the material fact (i.e., probative value); and (3) the existence of any rule or policy requiring the exclusion of relevant evidence (i.e., prejudicial effect or other § 352 concern).' [Citations.]" (*Hendrix, supra,* 214 Cal.App.4th at p. 238.) We review the admission of "other crimes evidence . . . for abuse of discretion." (*Ibid.*)

Appellant contends the court abused its discretion by admitting evidence of the 2007 conviction because the two offenses were insufficiently similar and did not establish a "common design or plan." According to appellant, "[t]he fact that a person transporting drugs in a car conceals the drugs does not rise to a 'common design and plan.'" "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403 (*Ewoldt*).) "[E]vidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts. Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." (*Ibid.*) "'[A] common scheme or plan focuses on the manner in which the prior misconduct and the current crimes were committed, i.e., whether the defendant committed similar distinctive acts of misconduct against similar victims under similar circumstances.'" (*People v. Walker* (2006) 139 Cal.App.4th 782, 803, quoting *People v. Scheer* (1998) 68 Cal.App.4th 1009, 1020.)

6

Here, the similarities between the offenses are sufficiently distinctive to create a pattern and to evidence a common plan or scheme.[3] In both incidents, appellant was found in an area known for drug trafficking. Both times, appellant consented to a search, presumably to create the impression of innocence. Both times, appellant concealed heroin in a deliberate way in a car he was driving. The 2007 and 2011 offenses were therefore sufficiently similar to support an inference that appellant employed a common scheme to transport heroin.

We also conclude evidence regarding the 2007 incident was sufficiently similar to be probative on the disputed issues of intent and knowledge. (*People v. Soper* (2009) 45 Cal.4th 759, 778-779; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [a ruling, "itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion"].) Appellant put all of the elements of the charged offenses at issue — including intent and knowledge — by: (1) pleading guilty in the prior offense but claiming not to know why officers "locked him up;" and (2) denying the heroin in the current offense was his. (*People v. Cowan* (2010) 50 Cal.4th 401, 476.) Evidence of the 2007 conviction refuted appellant's claim that he was the victim of bad luck, i.e., that he was innocently driving a car that happened to be filled with heroin. Additionally, we conclude that while the evidence may have been prejudicial to appellant, it was not more prejudicial than probative. (*Ewoldt, supra,* 7 Cal.4th at p. 405 [potential prejudice is

---

[3] In his reply brief and at oral argument, appellant suggested certain facts — such as his use of fake identification in both incidents — could not be used to justify the trial court's ruling because these facts were not before the court when it ruled on the admissibility of his 2007 conviction. To support this argument, appellant cites *People v. Hartsch* (2010) 49 Cal.4th 472 (*Hartsch*), where the California Supreme Court held appellate review of a trial court's ruling on motions to suppress "is limited to the evidence before the court when it heard the motion" to suppress. (*Id.* at p. 491.) *Hartsch* does not concern review of trial court rulings on admissibility of evidence under section 1101. In any event, we do not rely on appellant's repeated use of fake identification to reach our conclusion that the 2007 and 2011 incidents were sufficiently similar to establish the existence of a common design or plan.

lessened when prior crimes evidence is "no more inflammatory" than evidence concerning charged offenses].)

We cannot conclude the court's decision to admit evidence of appellant's 2007 conviction was "arbitrary, capricious, or patently absurd[.]" (*People v. Geier* (2007) 41 Cal.4th 555, 585, overruled on another point in *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.)[4]

DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Simons, J.

_____
Needham, J.

_____
[4]     We reject appellant's claim that the admission of the evidence deprived him of a fair trial.  In addition, we decline to consider appellant's suggestion that the court made "matters worse" by allowing the jury to "consider propensity evidence which was otherwise irrelevant" because his critique of the jury instructions does not comply with California Rules of Court, rule 8.204(a)(1)(B), which requires an appellant to present each point separately under an appropriate heading and which to support each argument with record citations.  (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14; *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201.)